UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  CR05-336-JLR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | SUMMARY REPORT OF U.S. |
| | ) | MAGISTRATE JUDGE AS TO |
| ROGELLE M. HARRIS, | ) | ALLEGED VIOLATIONS |
| | ) | OF SUPERVISED RELEASE |
| Defendant. | ) | |
| _____ | ) | |

An evidentiary hearing on supervised release revocation in this case was scheduled before me on October 16 and 19, 2009.  The United States was represented by AUSA Andrew Friedman and the defendant by Robert Leen.   The proceedings were digitally recorded.

Defendant had been sentenced on or about April 24, 2006 by the Honorable James L. Robart on charges of Conspiracy to Commit Bank Fraud and to Misrepresent Social Security Numbers, and Bank Fraud, and sentenced to 40  months custody, 5 years supervised release. (Dkt.  30.)

The conditions of supervised release included the standard conditions plus the requirements that defendant abstain from alcohol, participate in a substance abuse program,

01 submit to search, pay restitution in the amount of $116,016.08, provide access to financial

02 information, maintain a single checking account for all financial transactions, disclose any

03 business interests, disclose all assets and liabilities, be prohibited from incurring new credit

04 obligations or lines of credit, be prohibited from possessing any identification documents in any

05 but his true identity, and not associate with any known gang members.

06 The conditions of supervision were modified on November 17, 2008, prohibiting

07 defendant from any contact with Karen Altheimer. (Dkt. 32.)

08 In an application dated September 9, 2009 (Dkt. 34), U.S. Probation Officer Michael S.

09 Larsen alleged the following violations of the conditions of supervised release:

10 1. Ingesting alcohol, on or about September 6, 2009, in violation of the special

11 condition ordering him not to do so.

12 2. Committing the crime of assault, on or about September 8, 2009, in violation of

13 the general condition that he not commit another federal, state or local crime.

14 3. Changing residences, on or before September 6, 2009, without ten days prior

15 notice to the probation officer, in violation of standard condition number 6.

16 In an application dated September 30, 2009 (Dkt. 42), U.S. Probation Officer Michael S.

17 Larsen alleged additional violations of the conditions of supervised release:

18 4. Committing the crime of assault, on or about September 20, 2009, in violation of

19 the general condition that he not commit another federal, state or local crime.

20 5. Committing the crime of assault, on or about September 21, 2009, in violation of

21 the general condition that he not commit another federal, state, or local crime.

22 6. Failing to notify the probation officer, within 72 hours, of being questioned by a

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS
TO ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE -2

01 law enforcement officer, on or about September 21, 2009, in violation of standard condition

02 number 11.

03       Defendant was advised in full as to those charges and as to his constitutional rights, and

04 requested an evidentiary hearing before a Magistrate Judge (Dkt. 38). The hearing was held on

05 October 16 and 19, 2009, at which time testimony was taken, exhibits were admitted into

06 evidence, and the argument of the parties was considered (Dkt. 46, 47). The government moved

07 to dismiss violation 1 at the commencement of the evidentiary hearing. The matter is now ready

08 for decision.

09 **<u>Findings of Fact and Recommendations</u>**

10       I find by the preponderance of the evidence that defendant has violated the conditions of

11 supervised release as set forth below.

12 *Committing the Crime of Assault on or about September 8, 2009*

13       The conditions of supervise release provide that "The defendant shall not commit another

14 federal, state or local crime." (Dkt. 31 at 3, Ex. 1.) Defendant is alleged to have assaulted his

15 girlfriend, Glynis Harps, at their Burien apartment on September 8, 2009. In support of this

16 allegation, the United States offered the testimony of Deputy Adam Easterbrook of the King

17 County Sheriff's office. Deputy Easterbrook testified that Ms. Harps appeared at the precinct

18 office on that date, accompanied by her nine year old daughter, stating that the defendant had

19 gotten angry at her and thrown his cell phone at her, hitting her in the forehead. Deputy

20 Easterbrook testified that Ms. Harps was scared and crying, unable to speak at times, and worried

21 about what would happen. He testified that Ms. Harps had bruising around her eyes, arm and leg

22 that looked old, and a little bit of current bruising or swelling on her forehead. The officer took

01 photographs (Ex. 6-10), and took a typed statement from her. (Ex. 4.) Ms. Harps daughter also

02 spoke with the officer, saying that she was in her bedroom and heard her mother and Mr. Harris

03 arguing, then a slapping noise and her mother crying. The officer accompanied Ms. Harps and

04 her daughter to their apartment, where they took some clothing and left. The defendant was not

05 present.

06       Ms. Harps testified, denying that the written statement was accurate. She insisted that

07 she, not the defendant, was drinking and that she hit him after he called her a "bitch". She

08 indicated that she was angry because he was in contact with several other females and had not

09 come home the previous night. She testified that she had no bruises or physical marks caused

10 by the defendant, and that he had not assaulted her. She testified that she did not recall receiving

11 those bruises shown in the photographs but that she runs "into everything" and they were

12 probably caused by her walking into the furniture. She testified that she did go to the police

13 station but did not recall if she was crying or if she told the officer that she was afraid of him.

14       Mr. Harris testified that Ms. Harps received the bruise shown in Exhibit 10 after banging

15 herself on a table or desk. He denied that he had assaulted Ms. Harps.

16       Although Ms. Harps has changed her story, her recanting was not credible. While her

17 contemporaneous statement to the police was more detailed and specific, her hearing testimony

18 was vague, contradictory and unconvincing. She testified that she had no bruises or physical

19 marks when she went to the police station. When shown the bruises in the photographs, she

20 vaguely suggested that she had run into the furniture. She denied any bruising or swelling on

21 her forehead, although the police officer testified that it was visible. The evidence is more

22 consistent with the assault having occurred as set forth in Ms. Harps' original statement. (Ex. 4.)

01 I recommend the Court find defendant violated his supervised release as alleged in violation 2.

02 *Changing Residences Without Permission*

03 The conditions of supervised release require the defendant to notify the probation officer

04 at least ten days prior to any change in residence or employment. When defendant's probation

05 officer learned of the alleged assault by the King County Sheriff's office, he noticed that the

06 apartment number on the police report was different than the address previously provided by

07 defendant. Mr. Harris' monthly report for July, dated August 6, 2009 and received by the

08 probation office on August 11, 2009, indicated that he resided in apartment "D" and that no

09 persons were residing with him. (Ex. 25.) His report for August, dated September 8, 2009 and

10 received by the probation office on September 14, 2009, indicated that he moved on August 24,

11 2009 to Apartment "G" and was residing with Ms. Harps and her daughter. (Ex. 26.) [1]

12 Mr. Harris changed his residence on August 24, and did not notify his probation officer

13 of the move until September 14, the date that the report was received in the probation office. I

14 recommend the Court find defendant violated his supervised release as alleged in violation 3.

15 *Committing the Crime of Assault on or about September 20 and 21, 2009*

16 The incidents in question actually happened during the evenings of September 19, and

17 20, 2009. Kimberly Hosack, whose apartment faced the defendant's apartment across a small

18 alley (Ex. 2) testified that at about 8:45 pm she heard loud yelling and a woman crying in the

19 apartment across the alley. She heard a verbal threat about being thrown off the balcony and

20 heard a sound like someone was being hit. A male voice said "the last time was on me, this

21

22    [1] Mr. Harris is not charged with failing to file a timely report or with failing to accurately indicate with whom he was residing.

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS
TO ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE -5

01  one's on you." Then the lights were turned off in the apartment and it was quiet. She considered

02  calling the police, and wrote the date down. However she was alone and somewhat frightened.

03  The next day, Ms. Hosack went around to the building entrance to check the address in case

04  something would happen again. That evening, her boyfriend was home with her. They were

05  watching a movie at about 11:00. The area was fairly well lit from the surrounding apartments.

06  She could see a man holding a woman down on the balcony, bent over. The woman appeared

07  distressed, asking him to get off of her. It seemed that he held her down "quite awhile".

08       Ms. Hosack's boyfriend, Mark Gelinas, testified. He saw Ms. Harps and Mr. Harris on

09  the back balcony. It looked to him like the defendant was choking her. She was face down,

10  yelling at him to stop and get off her. Mr. Gelinas went to the back bedroom to call 911. After

11  he got off the phone, the two left the balcony and went into the apartment. The windows were

12  closed and the lights were off.

13       Another neighbor, Walter Roberts, testified. He also called 911 on September 20. (Ex.

14  14.) He was awakened by a little girl screaming "don't hit my mom, let my mom go." He saw

15  the defendant hunched over Ms. Harps, with one hand on the back of the neck and one on her

16  abdomen. He couldn't tell if Mr. Harris was pushing her over the railing, pulling her back, or

17  holding her on the railing. When they went back into the apartment, he heard a confrontation

18  and a smack like someone was hit. He heard Mr. Harris call her "bitch".

19       King County Deputy Sheriff Jonathan Hennessy testified that he took a statement from

20  Ms. Harps (Ex. 11, 12, 13) following the report of the incident. She told him that her boyfriend

21  had grabbed her right arm, bruising her bicep and ripped off her shirt. (Ex. 27.) She indicated

22  that he had slapped her the day before and she had a bruise on her right eye. She told the officer

01  that Mr. Harris had grabbed her on this occasion in the kitchen and threw her against the wall,

02  ripping off her shirt, hurting her arm. She walked out on the balcony and sat in a chair. He

03  continued yelling, then followed her out. He pushed her back into the chair and would not let

04  her get out. She was upset, distraught, scared and looked slightly intoxicated. The diagram in

05  his report shows the area of bruising on her arm, which was initialed by Ms. Harp. (Ex. 15.) She

06  filled out a statement in her own handwriting. (Ex. 13.) Photos were taken at the station the next

07  day. (Ex. 17-19.) Exhibit 19 shows where he grabbed her, tearing the shirt.

08      Ms. Harps testified that she had been drinking and tried to jump off the balcony. Mr.

09  Harris prevented her from doing so, saying "you're not going to do this in front of your

10  daughter". She testified that the defendant has never struck her, that her jealousy is out of

11  control, that she has a drinking problem, and that he is a good role model for her daughter. She

12  acknowledged that Exhibit 13 was in her handwriting, but she was "really drunk" when she

13  wrote it. She testified that the bruise on her arm came from Mr. Harris grabbing her and ripping

14  her shirt on the balcony, that she got up on a chair to jump and he grabbed her arm. She testified

15  that her daughter was screaming "please mommy don't jump".

16      Mr. Harris denied that he ever twisted Ms. Harps arm, and did not hit her. He testified

17  that he grabbed her to prevent her from jumping off the balcony.

18      As with the incident of September 8, I do not find Ms. Harps' attempt to recant her prior

19  statements to be credible. The testimony of the eyewitness neighbors is completely inconsistent

20  with her suggestion that she was trying to jump from the balcony or that her daughter was

21  pleading with her to not jump. Contemporaneously to the incidents in question, Ms. Harps made

22  detailed statements to the police and was photographed. She wrote her statement in Exhibit 19

01 in her own words and handwriting.

02      I recommend the Court find that the defendant violated the conditions of supervised

03 release as alleged in violations 4 and 5.

04      *Failing to Notify the Probation Officer of Questioning by Law Enforcement*

05      The conditions of supervised release require the defendant to notify his probation within

06 72 hours of being arrested or questioned by a law enforcement officer. (Dkt. 31 at 3, Ex. 1)

07 Deputy Hennessy, investigating the incident of September 20, was at the apartment when Mr.

08 Harris called Ms. Harps on her cell phone. The officer spoke to him, telling him that they would

09 like to hear his version of what happened. He asked Mr. Harris where he was and requested that

10 he return to the apartment. Mr. Harris called two more times and Deputy Hennessy repeated the

11 request. Mr. Harris said he knew they would going to arrest him and did not return to the

12 apartment or call back.

13      Mr. Harris testified that the officer asked him on the phone to tell him what had happened

14 and he told him. He admitted that he did not tell his probation officer about this. I recommend

15 the Court find that the defendant violated the conditions of supervised release as alleged in

16 violation 6.

17                        **Summary**

18      I recommend that violation 1 be dismissed and that the defendant be found to have

19 violated the conditions of supervised release as alleged in violations 2, 3, 4, 5, and 6, and that the

20 Court conduct a hearing limited to the question of disposition.

21

22

01

02        Pending a final determination by the Court, defendant has been released on an appearance

03 bond.

04        DATED this 23rd day of October, 2009.


06        _____
                  Mary Alice Theiler
07                United States Magistrate Judge

08

09

cc:     District Judge:        Honorable James L. Robart
10      AUSA:                  Andrews Friedman
        Defendant's attorney:  Robert Leen
11      Probation officer:     Michael S. Larsen

12

13

14

15

16

17

18

19

20

21

22

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS
TO ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE -9